# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA – LAKE CHARLES DIVISION

| | |
|---|---|
| **EXXONMOBIL LOW CARBON SOLUTIONS ONSHORE STORAGE, LLC,** | **CIVIL ACTION NO.** 2:25-cv-937 |
| *Plaintiff,* | |
| **V.** | **JUDGE** _____ |
| **ALLEN PARISH POLICE JURY; AND DOUG HEBERT, IN HIS OFFICIAL CAPACITY AS SHERIFF OF ALLEN PARISH, LOUISIANA** | **MAGISTRATE JUDGE** _____ |
| *Defendants* | |

## VERIFIED COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, ExxonMobil Low Carbon Solutions Onshore Storage, LLC ("ExxonMobil"), which files this Verified Complaint seeking a judgment declaring that Ordinance No. 6656 adopted by the Allen Parish Police Jury ("Allen Parish Ordinance," "Ordinance No. 6656" or, simply, "the ordinance") is *ultra vires* and unenforceable, preempted by state law, and providing injunctive relief to bar its enforcement. Because Ordinance No. 6656 conflicts with controlling law and directly halts development of ExxonMobil's Class V test wells which are permitted by the State and ready to be constructed (but for this ordinance), ExxonMobil must seek judicial relief. Only a declaration of invalidity and an injunction against enforcement can safeguard ExxonMobil's contractual rights, customer obligations, State regulatory approvals, and the public benefits that will flow from the project.

1

**INTRODUCTION**

1.     ExxonMobil files this Verified Complaint to protect two carbon-capture and sequestration ("CCS") projects—Hummingbird and Mockingbird—planned for Allen Parish.[1] ExxonMobil has invested years of scientific study and millions of dollars so that Louisiana manufacturers can ship lower-carbon products, Louisiana can attract new manufacturing facilities interested in producing such products, Louisiana communities can earn new tax revenue, and landowners can receive a new revenue stream associated with their property rights, in many cases in the form of millions of dollars in lease payments, storage fees, and easement payments.

2.     The projects will capture industrial $CO_2$, transport it by pipeline, and store it approximately 1 mile beneath impermeable rock—using proven technology that has existed for decades–thereby permanently removing greenhouse gas emissions while safeguarding drinking-water sources and wetlands.

3.     State regulators have already issued "APPROVAL TO CONSTRUCT" letters for the first exploratory Class V test wells at both the Mockingbird and Hummingbird sites after finding that ExxonMobil "met the interim requirements for permitting" and that drilling may proceed under strict environmental safeguards. Class V test wells are critical to gathering information for ExxonMobil's project, as they provide necessary injectivity testing data (among other subsurface data). No $CO_2$ injection will occur unless and until ExxonMobil later elects to

---

[1] On June 23, 2025, ExxonMobil received permits for the Hummingbird IZM Class V Stratigraphic Test Well (Serial No. 976260) and the Mockingbird IZM Class V Stratigraphic Test Well (Serial No. 976261). These permits and the supporting documentation are available publicly at https://www.dnr.louisiana.gov/page/permits-and-applications.

#104053883v2

move forward with the project, after obtaining and analyzing information from the Mockingbird and Hummingbird Class V injection test wells, and after ExxonMobil receives a corresponding Class VI permit from the Louisiana Department of Energy and Natural Resources (LDENR) that authorizes $CO_2$ injection activities.

4.      Yet the Allen Parish Police Jury adopted an ordinance (attached as Exhibit A and, upon information belief, assigned Ordinance No. 6656) that requires a Parish permit in addition to the already-issued LDENR permits and contains extremely onerous application procedures and permit requirements (and unquantifiable damages)—many of which are clearly in excess of existing State laws that ExxonMobil has already satisfied or will satisfy.

5.      Further, Ordinance No. 6656 is drafted such that the Parish has complete discretion over whether a permit ever issues and is under no timeline to do so. In fact, ExxonMobil's permits for construction of the Class V wells **require** ExxonMobil to complete construction of the Class V wells by June 23, 2026, a deadline ExxonMobil risks missing due to the uncertain and unconstrained process mandated by the Allen Parish ordinance.

6.      On May 5, 2025, the Allen Parish Police Jury convened a public hearing and adopted what it referred to as an "Injection Well Ordinance." A summary was published in the Kinder Courier-News on June 12, 2025. However, despite repeated requests, no final, official version of Ordinance No. 6656 has been made publicly available.

7.      ExxonMobil received the copy of the ordinance attached hereto directly from Allen Parish employees. But it has been unable to receive or verify that it is the final version of the ordinance (again, despite numerous requests and attempts).

8.      The version attached to this Complaint reflects, to the best of ExxonMobil's knowledge and understanding, the draft presented and approved at the May 5 hearing.

9.      ExxonMobil has reviewed the Police Jury's minutes, monitored subsequent publications and updates, and is unaware of any revisions to the draft. Accordingly, ExxonMobil challenges Ordinance No. 6656 as adopted and request that the Court require the Parish to produce the final version in its responsive pleadings.

10.     The ordinance directly conflicts and overlaps with the existing comprehensive state-and-federal regime that governs underground-injection control. ExxonMobil therefore seeks declaratory and injunctive relief to prevent enforcement of the unlawful ordinance and allow this beneficial project to advance.

11.     Also at the May 5 meeting, the Police Jury simultaneously requested an expedited attorney general opinion regarding the legality of Ordinance No. 6656. Thereafter, a summary of the ordinance ran in *The Kinder Courier-News* on June 12, 2025, and, by operation of La. R.S. 33:1366 and 33:1367, became effective ten days later, on June 22, 2025—even though the Attorney General had not yet opined on the Police Jury's authority.

12.     Ordinance No. 6656 purports to give the Allen Parish Police Jury the authority to regulate a field that the Louisiana Legislature wholly occupies and exclusively regulates. In fact, the Louisiana Legislature has expressly stated that "[i]t is the public policy of Louisiana and the purpose of this Chapter to provide for **a coordinated statewide program** related to the storage of carbon dioxide and to also fulfill the state's primary responsibility for assuring compliance with the federal Safe Drinking Water Act, including any amendments thereto related to the underground injection of carbon dioxide."  La. R.S. 30:1102(A)(4) (emphasis added).[2]

13.     By requiring a Parish permit for injection wells (including Class V wells), the

---

[2] Pursuant to Act 458 of the 2025 Regular Session, the Legislature is renumbering this section. It will be La. R.S. 30:1102(A)(2) after August 1, 2025.

4

Police Jury has exceeded its limited statutory powers to enact ordinances set forth in La. R.S. 33:1236,  provided a redundant permit and regulatory scheme to the powers that Congress vested in the U.S. Environmental Protection Agency under the Safe Drinking Water Act and that the Legislature delegated to LDENR and other state agencies. Were Ordinance No. 6656 to be held valid and enforceable, the State, industry, administrators, public, communities, and all stakeholders would be expected to collectively navigate not only State law governing injection wells, but potentially 64 differing local ordinances across Louisiana's 64 unique parishes. Such parish-by-parish navigation of carbon storage and carbon injection rules is plainly contrary to the Legislature's statement that it is Louisiana public policy to have a "coordinated statewide program" for these activities.

14.     A declaration of invalidity, reinforced by injunctive relief, is critical to safeguard ExxonMobil's contracts, Class V well permits, and the environmental and economic benefits the project would provide to Allen Parish, Allen Parish landowners, industrial customers located in Louisiana that have elected to capture emissions, and the State of Louisiana.

## PARTIES

15.     Plaintiff herein is **ExxonMobil Low Carbon Solutions Onshore Storage, LLC ("ExxonMobil")**, a limited-liability company with a principal place of business at 22777 Springwoods Village Parkway, Spring, Texas 77389. ExxonMobil is a single-member LLC whose sole member is Exxon Mobil Corporation, a New Jersey corporation with its principal place of business in Texas. ExxonMobil is therefore a citizen of New Jersey and Texas for purposes of diversity-of-citizenship jurisdiction.

16.     Made Defendant herein is the **Allen Parish Police Jury**, the governing authority of Allen Parish, Louisiana. It is a political subdivision of the State of Louisiana and therefore a citizen of Louisiana for purposes of diversity-of-citizenship jurisdiction.

#104053883v2

17.    Made defendant herein is **Douglas L. "Doug" Hebert III**, solely in his official capacity as Sheriff of Allen Parish. Sheriff Hebert is the chief law-enforcement officer for Allen Parish under La. Const. art. V, § 27, making him (in his official capacity) a political subdivision of the State of Louisiana and a citizen of Louisiana for diversity purposes. As Sheriff, he would be responsible for enforcing the Allen Parish ordinance challenged in this action, and he is therefore a necessary party to a suit challenging the legality and enforceability of an Allen Parish ordinance.

## JURISDICTION AND VENUE

18.    This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332 (diversity-of-citizenship jurisdiction).

19.    ExxonMobil is a citizen of New Jersey and Texas, whereas the Defendants are each a citizen of Louisiana.

20.    Accordingly, there is complete diversity between the parties.

21.    ExxonMobil already spent more than $75,000 on route surveys, engineering work, and procurement for its pipeline project in Allen Parish; it cannot recoup those costs unless the Court nullifies Ordinance No. 6656 at issue. If ExxonMobil cannot proceed with its permitted construction, it will also forfeit well over $75,000 in additional capital committed to the project.

22.    The Court has diversity jurisdiction because ExxonMobil is a citizen of New Jersey and Texas; each Defendant is a Louisiana citizen; and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

23.    The Court also has federal-question jurisdiction under 28 U.S.C. § 1331 because the claims arise under U.S. Const. art. VI, cl. 2. (the Supremacy Clause) and 42. U.S.C. §1983.

24.    This Court therefore has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

#104053883v2

25.     The Court may declare the parties' rights and duties under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and may issue injunctive relief under 28 U.S.C. § 1651 and Federal Rule of Civil Procedure 65.

26.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because every Defendant resides in this District and Division, and events giving rise to these claims occurred here.

27.     Each Defendant transacts business and enforces the challenged ordinance under color of state law solely within Allen Parish; the Court therefore has personal jurisdiction.

## FACTUAL BACKGROUND

### The Allen Parish Projects

28.     Since December of 2022, ExxonMobil and its affiliates have entered into numerous subsurface carbon-storage agreements (the "storage agreements") with certain private landowner(s) located in Allen Parish, Louisiana. The storage agreements grant ExxonMobil the exclusive right to perform geologic and geophysical surveys, drill stratigraphic test wells (including the Class V test wells LDENR permitted on June 23, 2025), and permanently sequester carbon dioxide within the deep subsurface underlying the subject properties.  The Allen Parish acreage is planned to be  a key storage site that will be connected to the ExxonMobil's existing Gulf-Coast $CO_2$-pipeline network.

29.     Mockingbird's total depth is $\pm$ 7,480 ft, with coring intervals from 4,980–7,280 ft; Hummingbird will drill to $\pm$ 7,660 ft, targeting 5,655–7,460 ft. Both intervals lie well beneath the base of the lowermost underground source of drinking water (USDW)—2,788 ft for Mockingbird and 2,430 ft for Hummingbird.

30.     Each proposed Class V test well is strictly "data-only": ExxonMobil will collect cores, fluid samples, injectivity data, and pressure data, and no disposal of waste via injection will occur at the Class V stage pursuant to the LDENR permits issued to construct these wells. While

ExxonMobil could, at a later date, seek to convert one or both of these wells into a Class VI well, it could only do so if it elects to pursue the project after analyzing test well data, and pursuant to established LDENR processes for such conversion, including the issuance of further LDENR permits. Surface casing will be set below the USDW aquifer and cemented to surface. Production casing will be cemented to surface and instrumented with fiber-optic and pressure sensors for continuous monitoring.

31.    On    June    23, 2025,    the    Office    of    Conservation    issued "APPROVAL TO CONSTRUCT" letters for Application Nos. 45462 (Hummingbird IZM 001) and 45314 (Mockingbird IZM 001). These letters are attached as Exhibits B and C to this complaint. Each letter states that ExxonMobil has "met the interim requirements for permitting" of the respective Class V stratigraphic test well and "constitutes a final permit decision regarding the construction of this well."  The corresponding permits and basis of permit decision can be found at https://www.dnr.louisiana.gov/page/permits-and-applications.  Importantly, the letters state that "[t]he approved work must be completed by June 23, 2026."

32.    The approval letters specify four principal conditions: (i) ExxonMobil must give the Office 72 hours' notice before spudding; (ii) casing-pressure tests must be witnessed by the agency; (iii) drilling must be completed within one year of the date on the final approval letter; and (iv) ExxonMobil must file a complete well-history package, including all logs and test results, within 20 days after drilling concludes.

33.    State technical reviewers confirmed that no wells lie within the quarter-mile area of review for Hummingbird and that only a single registered water well exists within one mile of Mockingbird. They further verified that ExxonMobil's proposed pads and access routes avoid wetlands, recorded cultural-resource sites, and habitat for federally listed species.

34.     In addition to the two Class V wells that LDENR has permitted, ExxonMobil has already filed two Class VI permit applications with the Louisiana Department of Energy and Natural Resources for the Hummingbird storage project southeast of Oberlin.

35.     The Class VI process is purposely comprehensive and rigorous. LDENR issued its first draft Class VI permit in April 2025, after fourteen months of review. In connection with its Class VI permit applications, ExxonMobil must submit comprehensive site studies, projections of subsurface $CO_2$ movement, detailed plans for tracking and leak detection, and evidence of long-term project management. Those submissions will incorporate data gathered from the Class V stratigraphic wells, including core samples, pressure tests, injectivity testing, and formation-water analyses. Following drilling and data submission, LDENR must approve any conversion of the wells to Class VI status before commercial $CO_2$ may be stored underground.

36.     If LDENR approves the Class VI permits, the injection sites will tie into ExxonMobil's Gulf-Coast $CO_2$ pipeline network, which ExxonMobil will use to provide $CO_2$ transportation and storage services for existing customers, with existing contracts that collectively account for about 14 million metric tons of $CO_2$ per year.

37.     ExxonMobil projects that full development of the Allen Parish reservoirs could generate over $100 million in lease bonuses, storage fees, and easement payments to local landowners while delivering long-term, permanent $CO_2$ storage more than a mile underground in sealed Miocene formations the company has determined—and which will be confirmed with information gathered from the test wells—to have the right geology for safe sequestration.

## The Allen Parish Police Jury Passes an Injection Ordinance

38.     Allen Parish is not a home-rule charter parish. Its governing body—the Allen Parish Police Jury—operates under the police-jury framework of La. Const. art. VI, § 7 (A) and La. R.S. 33:1233–1236. Because the Police Jury is a Dillon's-Rule entity, it holds *only* the powers

9

#104053883v2

that the constitution or a statute expressly confers.

39.    At its regular meeting on **May 5, 2025**, the Allen Parish Police Jury (i) held a public hearing on an Injection Well Ordinance, (ii) unanimously voted to seek an expedited Attorney-General opinion on its authority to regulate such wells, and (iii) adopted Ordinance No. 6656 on a motion that was duly seconded and carried.

40.    The Police Jury clerk published notice of the ordinance in the official journal (*The Kinder Courier-News*) on **June 12, 2025**.[3] That notice, reproduced verbatim in Exhibit D, certifies that the ordinance was adopted on May 5. It therefore became effective ten (10) days after publication, as provided by La. R.S. 33:1366–67.

41.    Because La. R.S. 33:1366 requires publication and La. R.S. 33:1367 gives Ordinance No. 6656 force ten days later, it became law on **June 22, 2025**—ten days after the newspaper publication. No referendum petition was filed within ten days of publication.

### Substantive Provisions of Ordinance No. 6656

42.    Ordinance No. 6656 inserts a new **"PERMITTING AND REGULATIONS FOR INJECTION WELLS"** into the Allen Parish Code.

43.    Section (a) defines an "Injection well" as "any and all injection wells as defined by the United States Environmental Protection Agency Underground Injection Control ("UIC") well classes," and expressly lists Classes I through VI. The definition incorporates EPA's six UIC well classes and the concept of an "Underground Source of Drinking Water (USDW)." It also defines "Plume" as "the physical extent of the contaminant underground." *Id.*

44.    Section (b) states that "*All Injection wells [Classes I-VI] shall be permitted.* A

---

[3] Available publicly at https://allenparishtoday.com/2025/06/12/kinder-courier-public-notices-june-12-2025/.

#104053883v2

permit to drill an injection well within Allen Parish may be issued only if all of the following conditions are met." *Id*. Notably, Section (b) makes clear that even if the many unworkable conditions are met, the Parish still might not issue a permit, nor is it under no specific timeline to do so.

45.    Since the Hummingbird and Mockingbird test wells are both permitted as Class V wells, they are subject to Ordinance No. 6656—regardless of whether any injection takes place. However, as discussed above, ExxonMobil anticipates the need to conduct injectivity testing to support its Class VI application. Neither the Hummingbird nor Mockingbird test wells can be used to inject $CO_2$ for storage without further regulatory approval from LDENR.

46.    Ordinance No. 6656 then lists items that every permit application must contain, including:

a.   detailed geologic reports, maps, drawings, blueprints, and diagrams showing, among other things, all underground strata through which any injection well is intended to be drilled and all strata at least one thousand (1,000) feet below the intended bottom depth of the well; and any geologic faults within a five-mile radius of the proposed injection well; and all underground streams or aquifer, including fresh and salt water streams and aquifers;

b.   a map or site plan must be submitted to police jury engineering department and filed in the clerk of court office. The map or site plan must display all parcels of property within the projected and actual/projected plume location, including all Class V wells used for monitoring of injection wells and all closed and active oil wells in the vicinity of the plume. The mapped area must display and extend a minimum of three (3) miles beyond the plume. The projected and actual plume must be displayed and distinguished on the map. The map shall be updated every five (5) years. All water wells and water systems must be clearly displayed on the map. Pipelines locations that supply injection wells shall also be shown.

c.   The initial application for a permit shall be accompanied by a non-refundable fee, paid by certified check, in the amount of five thousand dollars ($5,000.00) plus all other permit fees required by the building code and any other parish ordinance to begin review.

d.   An additional fee shall be may assessed upon completion of the permit review process in order to cover costs for advanced scientific or geologic review and any review or analysis required to be performed beyond the Police Jury's capability to perform in-

house. Additional fees shall be calculated based on any and all actual documentable costs expended during the review process plus a 10% parish permit handling and maintenance fee. This additional fee shall paid by cashier's check made payable to the Allen Parish Police Jury prior to the issuance of the final permit.

    e.  the type and volume of material to be injected;

    f.  compliance with the parish heavy-hauler and utility-permitting ordinances and submission of two separate truck-routing maps;

    g.  engineering drawings of all storage, treatment and disposal facilities; and

    h.  copies of every filing made to any other local, state or federal agency.

*Id*.

    47.    Moreover, the "Specific Requirements to Be Followed and Demonstrated" portion of includes:

    a.  A prohibition on any injection well or pipeline within two miles of any house, mobile home, apartment, condominium, school, commercial structure, or other structure used as a residence or business.

    b.  The requirement for quarterly testing of all water wells and water systems located within five (5) miles of the projected plume;

    c.  The requirement that ExxonMobil already have (at this preliminary test well permitting stage, lease agreements signed by all property owners where the projected and planned plume is being stored below ground and filed at the Clerk of Court's office;

    d.  The requirement that ExxonMobil install, own and operate a community alarm system, tested monthly,

    e.  A prohibition on drilling where an abandoned or active oil well lies inside the plume unless it is first plugged;

    f.  A requirement for a federally secured bond sufficient to cover plugging and mitigation (which amount is unspecified and uncapped); and

    g.  A requirement that the operator odorize the $CO_2$ stream so leaks can be detected by smell (which is not yet technically feasible).

*Id*.

    48.    Ordinance No. 6656 sets no timeline for the Police Jury to approve or act once those prerequisites are met, leaving applicants subject to potential indefinite delay and, in ExxonMobil's

case, at risk of not meeting the LDENR deadline to construct either the Hummingbird or Mockingbird Class V test well. A public hearing must be held within sixty days of the application; notice must run twice in the official journal at least thirty days beforehand, be posted at parish offices two weeks in advance, and make the complete application publicly available thirty days before the hearing (in each case, despite the fact that LDENR already held public hearings for each Class V as part of its permitting process).[4]

49.    Any person may comment orally or in writing, and written comments remain open for five working days after the hearing. After the comment window closes, Ordinance No. 6656 is silent on when a decision shall be rendered, giving the Police Jury unlimited time to grant, deny, or ignore the permit request.

50.    If a permit is approved, the parish administrator may condition it on:

a.  the Police Jury having access to the site and facility at all times

b.  The posting of a bond in an undetermined amount greater than five hundred thousand dollars ($500,000), to be determined in each case by the Police Jury, which amount is to be "sufficient to cover the costs of any personal injury or property damage, including environmental damage, that may occur as a result of the activities at the facility."; and

c.  "any other conditions" the Police Jury deems appropriate. *Id.*

51.    Lastly, the Administration section of Ordinance No. 6656 authorizes the parish administrator to promulgate rules (subject to Jury approval) and imposes both civil liability and a criminal misdemeanor punishable by a fine of up to $5,000 (which exceeds the statutory maximum of $500 per day of parish ordinances) or 30 days in jail for each day of violation.

52.    These provisions demonstrate how Ordinance No. 6656 creates an unworkable

---

[4] In fact, LDENR held public hearings on these two Class V permit applications on April 30, 2025 in Allen Parish. A copy of the LDENR public notice can be found at: https://www.dnr.louisiana.gov/assets/OC/ClassVI/Public_Hearings/Public_Notice_Exxon_Mockingbird.pdf.

#104053883v2

framework by attempting to regulate an activity already comprehensively governed by the State. In doing so, it duplicates, exceeds, and conflicts with existing state and federal underground injection programs—exposing operators and landowners to indefinite fees, bond requirements, and potential criminal penalties.

53.    As explained more fully in Counts I and II below, state law provides core limits on the Allen Parish Police Jury's regulatory power—limits that Ordinance No. 6656 ignores completely:

| **SOURCE OF LAW** | **WHAT IT ALLOWS / FORBIDS** | **HOW ORDINANCE NO. 6656 OVERSTEPS** |
|---|---|---|
| **La. R.S. 33:1236** (enumerated-powers statute) | Lists the *only* subjects a police jury may regulate (roads, drainage, garbage collection, etc.): Nothing in the list mentions underground-injection wells. | Creates an entire permitting program for UIC/CCS wells, sets technical operating conditions (setbacks, monitoring, plume mapping), and levies a $500,000 bond—subjects not enumerated in § 1236. |
| **La. R.S. 33:1236.6(B)** (industrial-waste carve-out) | Allows police juries regulate disposal of "industrial waste" ***unless*** the waste is generated by industries "regulated by Chapter 1 [Office of Conservation] or Chapter 11 [LDEQ] of Title 30." | Targets exactly the fluids and activities that the carve-out removes from parish control, thus acting ultra vires. |
| **La. R.S. 33:1242** (enforcement limit) | A police jury may "enforce ordinances which it is **authorized to pass**"—and no others. | Tries to enforce permit denials, operating bans, and fines in a field where it has no underlying authority, violating § 1242's prerequisite. |
| **La. R.S. 33:1243(A)(1)** (penalty cap) | Caps penalties at **$500 per offense** and **30 days** in parish jail unless another statute says otherwise. | Sets misdemeanor fines of **$5,000 per offense**—ten times the statutory maximum. |
| ***Dillon's* Rule / jurisprudence**[5] | Local governments possess only powers "expressly" or | Every novel requirement (setbacks, plume maps, $500k bond, $5k fines) |

---

[5]    *See Air Prods. Blue Energy, LLC v. Livingston Par. Gov't*, 2022 U.S. Dist. LEXIS 231839, at *14-17 (M.D. La. Dec. 26, 2022) (concluding that "[t]he pervasive extent of this law strongly suggests that the Legislature intended to preempt the field of underground injection control in its

|  | "necessarily" granted; any doubt is resolved against the parish. | lacks an express state grant, so all are void under Dillon's Rule. |
|---|---|---|
| **La. Const. art. VI, § 9(B)** (State pre-emption of police power) | Prevents local governments from exercising police power "in a manner inconsistent with the general law." | Conflicts with the State's comprehensive UIC rules (La. Admin. Code tit. 43, Parts XVII & XIX) and permit framework under La. R.S. 30:4.1, triggering constitutional pre-emption. |
| **La. R.S. 30:4.1 & UIC rules** (field occupation) | Gives the Commissioner of Conservation exclusive authority over drilling, casing, monitoring, plugging, and permitting of all disposal wells, including Class V and VI wells. | Adds burdens the state never imposes: a separate parish permit + fees, plume-acre tax, truck-routing clearances, a two-mile setback, quarterly testing of all wells within five miles, 100 % surface-owner consent, community sirens and fire-training, an extra open-ended bond, and $CO_2$ odorization—none of which appears in La. R.S. 30:4.1 or LAC 43:XVII/XIX. |
| **42 U.S.C. § 300h et. seq.** (Federal SDWA framework) / **U.S. Const. art. VI, cl. 2.** (Supremacy Clause) | Establishes a federal UIC program over which the EPA has granted Louisiana primacy & bars state laws obstructing federal powers. | Stands as an obstacle to the accomplishment of federal objectives by imposing the above-stated additional/duplicative requirements. |

Any one of these voids Ordinance No. 6656. Accordingly,  it is *ultra vires* and preempted by state

law. ExxonMobil is entitled to declaratory and injunctive relief.

### <u>COUNT I – Declaratory Judgment that Ordinance No. 6656 is *Ultra Vires* and Unenforceable</u>

54.    Allen Parish is a *Dillon's*-Rule police-jury parish. Having no home-rule charter, the

Allen Parish Police Jury possesses only those powers that the Louisiana Constitution or statutes

---

entirety" and "the State of Louisiana has circumscribed the [Livingston Parish] Moratorium by undertaking to allow UIC wells through its UIC program.");

*ABL Mgmt., Inc. v. Bd. of Sup'rs of S. Univ.,* 00-798, pp. 6-7 (La. 11/28/00), 773 So. 2d 131, 135 ("The Legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject."); and

La. Atty. Gen. Op. 85-495 (July 24, 1985) (Noting that parish authority to regulate "does not include waste regulated exclusively by the Commissioner of Conservation or by the Department of Environmental Quality."

expressly grant.

55.    Neither the Constitution nor La. R.S. 33:1236 empowers a police jury to regulate underground-injection wells. La. R.S. 33:1236 sets out an exhaustive catalogue of police-jury powers; regulating CCS or any class of underground-injection well is absent from that list. Under Dillon's Rule, Allen Parish therefore has no legislative jurisdiction over CCS operations.

56.    Moreover, La. R.S. 33:1236.6(B) expressly withholds local authority over "any industrial waste produced by industries or industrial processes regulated by [the Commissioner of Conservation] or [the Department of Environmental Quality]." The Commissioner of Conservation exercises that exclusive authority through Chapter 1 of Title 30 (see *e.g.*, La. R.S. 30:4.1 on UIC wells), and DEQ exercises its authority through the Louisiana Environmental Quality Act (now Subtitle II, Chapter 1 of Title 30). Waste from UIC or $CO_2$-sequestration wells thus lies entirely outside parish control under § 1236.6(B).6.

57.    Further, La. R.S. 33:1242 specifically lists ordinances that Louisiana police juries are authorized to pass. Because §§ 1236 and 1236.6 confer no ability to regulate injection wells, § 1242 bars the Allen Parish Police Jury from enforcing Ordinance No. 6656 against UIC-well operations.

58.    State law also caps parish-ordinance penalties at a $500 fine and thirty days in jail unless a special statute provides otherwise (La. R.S. 33:1243(A)(1)). Ordinance No. 6656, by contrast, makes each violation a misdemeanor punishable by up to a $5,000 fine—*per offense*. Because Ordinance No. 6656 exceeds the statutory ceiling, it is invalid on this ground as well.

59.    Ordinance No. 6656 creates a parish-level permitting regime that (1) demands a separate parish permit and fee, (2) mandates, *inter alia*, two-mile residential setbacks, five-mile quarterly water-testing obligations, and plume-mapping mandates, and (3) conditions approval on

16

public hearings, occupational-license taxes, and a $500,000 bond—none of which state law requires or authorizes.  These requirements particular to Allen Parish run afoul of the Legislature's stated policy "to provide for a coordinated statewide program related to the storage of carbon dioxide."  La. R.S. 30:1102.

60.    By conditioning the drilling of Class V stratigraphic wells on parish approval and imposing obligations that conflict with or exceed those set by the Office of Conservation, Ordinance No. 6656 intrudes on a field the Legislature has reserved to the State.

61.    Accordingly, Ordinance No. 6656 is **null and void *ab initio*** under insofar as it seeks to regulate Class V injection wells.

62.    Moreover, the Parish's failure to make available the final version of Ordinance No. 6656 deprives regulated entities of fair notice and renders enforcement arbitrary. ExxonMobil is left to interpret and comply with a draft version that may or may not reflect the enacted law. This lack of transparency violates fundamental principles of due process and underscores Ordinance No. 6656's unenforceability, further compounding its legal infirmities and the need for judicial intervention.

63.    In short, Ordinance No. 6656 is *ultra vires* and unenforceable on multiple, independent grounds:

    a.  it invents regulatory powers that La. R.S. 33:1236 never granted;

    b.  it targets "industrial waste" that § 1236.6(B) expressly reserves to state regulators under Chapters 1 and 11 of Title 30;

    c.  it imposes $5,000-per-offense fines that exceed the $500 ceiling in § 1243; and

    d.  the Parish's failure to make available the final version of it deprives regulated entities of fair notice and violates due process.

64.    ExxonMobil therefore seeks a declaratory judgment under 28 U.S.C. §§ 2201–02 declaring Ordinance No. 6656 invalid and unenforceable.

17

## COUNT II – Declaratory Judgment that the Allen Parish Ordinance is Preempted by State Law

65.     Article XI, § 1 of the Louisiana Constitution assigns the Legislature exclusive authority to enact laws governing the State's natural resources. Using that power, the Legislature delegated to LDENR oversight of geologic carbon-dioxide sequestration (La. R.S. 30:1102) and expressly empowered the Commissioner to regulate $CO_2$ transport connected to such sequestration. See La. R.S. 30:1107(B). Louisiana has therefore developed a detailed statutory and regulatory scheme covering every facet of $CO_2$ transportation and storage. *See* La. R.S. 30:1102(A)(4) (stating that "the public policy of Louisiana and the purpose of this Chapter [is] to provide for a coordinated statewide program" to regulate $CO_2$ storage and injection).

66.     The Legislature has likewise fully occupied the field of injection-well regulation. Under La. R.S. 30:4.1(B), the Assistant Secretary of the Office of Conservation holds exclusive authority to adopt rules on drilling, casing, cementing, disposal intervals, monitoring, plugging, and permitting of disposal wells—including Class V stratigraphic wells. Acting pursuant to that mandate, the Office has issued comprehensive regulations—approved by EPA—codified at La. Admin. Code tit. 43, parts XVII and XIX.

67.     Because that state program fully regulates siting, construction, monitoring, bonding, and closure of Class V wells, no parish may impose *additional* or *conflicting* requirements. See La. Const. art. VI, § 9(B) ("Police power not abridged").

68.     The Safe Drinking Water Act ("SDWA"), 42 U.S.C. § 300f et seq., directs the EPA to establish a UIC program that protects underground sources of drinking water. *See* 42 U.S.C. § 300h.

69.     Under 42 U.S.C. § 300h-1(b)(1), EPA may delegate primary enforcement responsibility (primacy) to a state whose rules are at least as protective as federal standards. By

#104053883v2

Federal Register notice dated April 23 1982, EPA granted Louisiana primacy over UIC Classes I–V.[6] Once primacy is granted, the State program shall operate in lieu of the Federal program for those well classes. *See* 42 U.S.C. § 300h-1(c).

70.    The Louisiana Office of Conservation has promulgated comprehensive regulations—codified at La. Admin. Code tit. 43, XVII & XIX—governing the drilling, casing, cementing, monitoring, bonding, and closure of Class V stratigraphic test wells. Because EPA approved those rules, they constitute the operative federal program within Louisiana.

71.    Under 42 U.S.C. § 300h-2(c) and the Supremacy Clause (U.S. Const. art. VI, cl. 2), any state or local measure that interferes with the accomplishment and execution of the full purposes and objectives of Congress is preempted. Congress's objective in authorizing primacy is to ensure that a single, coherent set of UIC standards governs each state.

72.    Recently, the Middle District of Louisiana held that Livingston Parish's attempt to place a moratorium on seismic activity in connection with potential carbon sequestration projects was preempted by state law regulating carbon sequestration activities. *See Air Products Blue Energy, LLC v. Livingston Parish Gov't*, No. 3:22-cv-809; 2022 U.S. Dist. LEXIS 231839 (M.D. La. Dec. 26, 2022) (finding state preemption of local laws that "encroach[] on the field of underground injection control and attempts to regulate the drilling of Class V test wells and other wells used for long term storage of carbon dioxide.").

73.    As noted above, Ordinance No. 6656 layers extra-statutory conditions—including a separate parish permit and fee, two-mile residential setbacks, five-mile quarterly water-testing, plume-mapping, an acreage-based occupational tax, a $500,000 bond, and public-hearing

---

[6] Louisiana also received primacy as to Class VI wells via Federal Register notice on January 5, 2024, becoming effective on February 4, 2024. *See generally:* https://www.dnr.louisiana.gov/page/primacy.

prerequisites—onto the federally approved, state administered program, effectively blocking construction of a permitted Class V stratigraphic well until parish approval is granted.

74.     These duplicative and more burdensome requirements frustrate the SDWA's uniform permitting framework, delay state-approved Class V and VI wells, and undermine the predictability that Congress ensured by delegating primacy. Ordinance No. 6656 therefore stands as an obstacle to the accomplishment of federal objectives and is pre-empted.

75.     Pursuant to 28 U.S.C. §§ 2201–02, ExxonMobil seeks a judgment declaring that the Allen Parish Injection-Well Ordinance is pre-empted and invalid under La. Const. art. VI, § 9(B), the SDWA, and Supremacy Clause insofar as it imposes any local permitting, fee, setback, testing, bonding, or other additional requirements on Class V injection wells.

76.     ExxonMobil reserves any additional federal or state preemption theories—including conflict and field pre-emption—should Defendants attempt to enforce Ordinance No. 6656 against Class VI wells or related infrastructure.

## COUNT III – Injunctive Relief

77.     Because Ordinance No. 6656 is pre-empted and invalid, ExxonMobil is entitled to injunctive relief—preliminary and permanent—barring enforcement of Ordinance No. 6656.

78.     All four factors required for injunctive relief are satisfied.

79.     **First**—although irreparable injury need not be shown where, as here, the challenged conduct is unlawful—failure to enjoin enforcement will forfeit, not merely delay, ExxonMobil's rights. Because the Class V approvals lapse unless drilling is completed within one year of the final permit's issuance, any open-ended delay imposed by Allen Parish would, in practical effect, operate as a de facto moratorium—running out the regulatory clock, stripping ExxonMobil of its state authorizations, derailing project-financing milestones, causing a loss of good will and damage to business relationships, and preventing the geologic data collection critical

20

to the pending Class VI applications. None of these injuries can be remedied by money damages.

80.     **Second,** for the reasons set out above, ExxonMobil is overwhelmingly likely to prevail on its claims that Ordinance No. 6656 is pre-empted by La. R.S. 30:4.1 and the SDWA/UIC program *and* that the Ordinance No. 6656 is *ultra vires* and void.

81.     **Third and Fourth,** enjoining an invalid ordinance imposes no cognizable harm on Defendants and serves the public interest by vindicating the Legislature's chosen regulatory framework and the SDWA's goals.

82.     ExxonMobil therefore requests that the Court enter (a) an order requiring Defendants to produce the final, enacted version of Ordinance No. 6656 andenjoining any enforcement until such final version is made publicly available; (b) a temporary restraining order (if necessary); (c) a preliminary injunction prohibiting Defendants from enforcing or attempting to enforce Ordinance No. 6656 against ExxonMobil's Class V stratigraphic-well activities; and (d) a permanent injunction prohibiting Defendants from enforcing or attempting to enforce Ordinance No. 6656 against ExxonMobil's Class V stratigraphic-well activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ExxonMobil Low Carbon Solutions Onshore Storage, LLC respectfully requests that the Court:

1.  **Declare** that Ordinance No. 6656 is *ultra vires* and preempted by Louisiana law , and is therefore **invalid and unenforceable** insofar as it imposes any local permitting, fee, setback, testing, bonding, or other requirements on Class V injection wells (including stratigraphic test wells) or related activities;

2.  **Issue preliminary and permanent injunctive relief** prohibiting Defendants, their officers, agents, employees, and all persons acting in concert with them from enforcing or

attempting to enforce the Allen Parish Injection-Well Ordinance against ExxonMobil's

Class V stratigraphic-well activities and associated infrastructure;

3. **Order** the Allen Parish Police Jury to produce the final, enacted version of Ordinance No.

6656 and enjoin any enforcement until such final version is made publicly available and

subject to judicial review;

4. **Award ExxonMobil its taxable costs** under 28 U.S.C. § 1920 and any other expenses

allowed by law;

5. **Grant such further relief**—legal or equitable—as the Court deems just and proper.


Dated: July 1, 2025                                Respectfully submitted,

                                                   **JONES WALKER LLP**

                                                   */s/Michael C. Drew*
                                                   Marjorie J. McKeithen (Bar Roll No. 21767)
                                                   Michael C. Drew (Bar Roll No. 30884)
                                                   Brett S. Venn (Bar Roll No. 32954)
                                                   201 St. Charles Avenue, 49th Floor
                                                   New Orleans, Louisiana 70170
                                                   Telephone: (504) 582-8420
                                                   Facsimile: (504) 589-8420
                                                   mmckeithen@joneswalker.com
                                                   mdrew@joneswalker.com
                                                   bvenn@joneswalker.com

                                                   Lauren F. Morrison (Bar Roll No. 40775)
                                                   445 North Boulevard, Suite 800
                                                   Baton Rouge, Louisiana 70802
                                                   Telephone: (225) 248-2415
                                                   Facsimile: (225) 248-3115
                                                   lmorrison@joneswalker.com

                                                   Dakota J. Stephens (La. Bar No. 40522)
                                                   3100 North State St., Ste. 300
                                                   Jackson, Mississippi 39216
                                                   Telephone (601) 949-4900
                                                   Facsimile (601) 949-4804
                                                   dstephens@joneswalker.com

#104053883v2

*Counsel for Plaintiff,*
*ExxonMobil Low Carbon*
*Solutions Onshore Storage LLC*

#104053883v2

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA – LAKE CHARLES DIVISION

| | |
|---|---|
| **EXXONMOBIL LOW CARBON SOLUTIONS ONSHORE STORAGE LLC,** | **CIVIL ACTION NO. _____** |
| *Plaintiff,* | |
| **V.** | **JUDGE _____** |
| **ALLEN PARISH POLICE JURY; AND DOUG HEBERT, IN HIS OFFICIAL CAPACITY AS SHERIFF OF ALLEN PARISH, LOUISIANA,** | **MAGISTRATE JUDGE _____ _____** |
| *Defendants* | |

## DECLARATION OF WILLIAM LANDUYT

In accordance with 28 U.S.C. § 1746, I, William Landuyt, declare under penalty of perjury that the foregoing is true, correct, and within my personal knowledge:

1.  I am a person over the age of twenty-one (21), am of sound mind, and am otherwise competent make this declaration. I make this declaration based on my own personal knowledge and information.

2.  I am the U.S. Gulf Coast Carbon Capture, and Storage Business Manager of ExxonMobil Low Carbon Solutions Onshore Storage LLC ("ExxonMobil").

3.  I have reviewed the allegations set forth in ExxonMobil's Complaint for Declaratory and Injunctive Relief.

4.  The factual allegations made therein are correct and true to the best of my information and belief.

FURTHER DECLARANT SAYETH NOT.

Executed on this 1st day of July, 2025.

WILLIAM LANDUYT

#104034832v2